Javier Merino
(NJ Bar #078112014)
DANNLAW
825 Georges Road, Second Floor
North Brunswick, NJ 08902
Telephone: (201) 355-3340
jmerino@dannlaw.com

Robert E. DeRose (admitted *pro hac vice*)
Anna R. (Caplan) Doren (admitted *pro hac vice*)
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Suite 210
Columbus, OH 43219
Telephone: (614) 221-4221
bderose@barkanmeizlish.com
adoren@barkanmeizlish.com

Clif Alexander (admitted *pro hac vice*)
Carter T. Hastings (admitted *pro hac vice*)
ANDERSON ALEXANDER, PLLC
101 N. Shoreline Boulevard, Suite 610
Corpus Christi, TX 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
carter@a2xlaw.com

***Attorneys for Plaintiffs***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| CHRIS C. CHRISTENSEN, JONATHAN JACK, and GLADIS MEDINA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FREEDOM MORTGAGE CORPORATION, <br><br> Defendant. | Civil No. 25-CV-01827-CPO-AMD <br><br> District Judge Christine P. O'Hearn <br><br> Magistrate Judge Ann Marie Donio |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Chris C. Christensen, Jonathan Jack, and Gladis Medina (collectively, "Plaintiffs") respectfully request preliminary approval of a class action Settlement in the amount of $750,000.00.

## I.     BACKGROUND

Named Plaintiff Chris C. Christensen filed the original Complaint in this case on March 12, 2025. (*See* ECF No. 1, Compl.) Plaintiff alleged that Defendant Freedom Mortgage Corporation ("Defendant" or "Freedom") violated the Fair Labor Standards Act ("FLSA") and Oregon Wage Laws by failing to compensate him and other similarly situated employees for all hours worked, including overtime hours, resulting from two alleged corporate policies. *First*, Plaintiff alleged that he and other remote call-center employees worked "off-the-clock" for a number of minutes before each shift during the time it took to turn on their work computers, open the software programs used to perform their duties, and clock in, and that this unpaid time resulted in unpaid overtime. *Second*, Plaintiff alleged that Freedom paid him and other hourly call-center employees various non-discretionary bonuses that Freedom allegedly did not include in the employees' regular rates of pay when calculating their overtime pay rates. Since then, Plaintiffs filed a First Amended Collective/Class Action Complaint on October 8, 2025, adding additional claims that the same alleged policies violate the laws of Pennsylvania and New Jersey. (*See* ECF No. 42, First Am. Compl. ("FAC").)

Freedom denies all of Plaintiffs' allegations. Specifically, Freedom denies that it violated the FLSA or the laws of Oregon, Pennsylvania, and/or New Jersey, denies that it otherwise violated any federal or state law, and denies that any facts would justify resolution of the case on a class or collective-wide basis. Freedom denies that any employees worked any time off-the-clock and

DM2\301265862.2

denies that the bonuses cited in the pleadings were not factored into employees' regular rates of pay and overtime pay rates.

In or around May 2025, Plaintiffs and Freedom (collectively, the "Parties") agreed to mediate, and on October 16, 2025, they participated in a full-day, in-person mediation with mediator Dennis Clifford in New York City. Before the mediation, the Parties engaged in extensive informal discovery, which included, *inter alia*, multiple exchanges of payroll and timesheet data, employee handbooks, and other documents describing Freedom's compensation, timekeeping, and overtime pay policies. (**Exhibit A**, Declaration of Bob DeRose ¶ 20.) Plaintiffs' Counsel prepared a damages model based on pay and time data Defendant produced for a 10% sample of the employees' workweeks for the relevant time period(s). (*Id*. ¶ 25.) Plaintiffs' Counsel also interviewed more than a dozen witnesses, opt-ins, and potential opt-ins about their employment with Freedom and investigated Plaintiffs' overtime claims. (*Id*. ¶ 21.) This extensive pre-mediation discovery and investigation enabled Plaintiffs and their Counsel to evaluate the potential strengths and weaknesses of Plaintiffs' claims and Freedom's defenses.

The Parties reached a settlement in principle at the mediation. On December 4, 2025, the Parties agreed to a Memorandum of Understanding reflecting their agreement to resolve this case on a collective and class-wide basis.

Subsequently, they negotiated a long form settlement agreement, attached as **Exhibit B**.

## II.     SUMMARY OF SETTLEMENT

### A.     Rule 23 Classes And FLSA Collective Defined

The Settlement Agreement represents a global resolution of Plaintiffs' claims for the FLSA Collective Action as well as the Rule 23 Classes comprised of Freedom employees who worked

in Oregon, Pennsylvania, and New Jersey. The definitions of the FLSA Collective Action and Rule 23 Classes are set forth in Sections III and IV.1 of the Settlement Agreement.

### B.    Settlement Amount

Under the Settlement, Freedom agrees to pay a maximum Settlement Amount of $750,000.00 (the "Total Settlement Amount"). (Settlement Agreement § IV(7).)  All settlement payments to eligible Class and Collective Action Members, Freedom's share of payroll taxes applicable to the settlement payments, Service Payments to the Named Plaintiffs, Class Counsel's attorneys' fees and expenses, and the Settlement Administrator's fees and expenses shall be paid out of the Total Settlement Amount. (*Id.*)

The Parties anticipate that a Net Settlement Fund ("NSF") of approximately $462,500.00, which equals the Total Settlement Amount less the Service Payments to the Named Plaintiffs (totaling $12,500), Class Counsel's attorneys' fees and costs (approximately $250,000), and the Settlement Administrator's fees and expenses (which shall not exceed $25,000), will be made available for distribution to Class and Collective Action Members who submit timely and complete Claim forms. (*Id.* § IV(8)(e).)

### C.    Calculation Of Class And Collective Action Members' Settlement Shares

Each Class and Collective Action Member's share of the Settlement will be calculated based on a "points" system.

Each Class and Collective Action Member will receive either 1 or 2 points for each week worked during the relevant period(s) in a remote, non-exempt position that has required accepting calls from and/or making calls to Freedom customers and for which employees have been required to clock in and/or log in to work using a software application.

The point-allocation formula is as follows:

DM2\301265862.2

| FLSA Collective Action | 2.0 points per workweek |
|---|---|
| New Jersey Class | 1.0 point per workweek |
| Oregon Class | 1.0 point per workweek |
| Pennsylvania Class | 1.0 point per workweek |

(*Id.* § IV(10)(a).)  The Net Settlement Fund will be allocated *pro rata* based on the number of points assigned to each Class and Collective Action Member.  (*Id*. § IV(10)(b).)  (Part III.A below explains the rationale behind the proposed points system.) The portions of the Net Settlement Fund allocated to Class and Collective Action Members who do not become Claimants will remain the property of Freedom.

### D.    Service Payments To Named Plaintiffs

Subject to the Court's approval, Named Plaintiff and Class Representative Christensen will receive up to $7,500 as a Service Payment and Named Plaintiffs and Class Representatives Jack and Medina will each receive up to $2,500 as Service Payments. (*See id.* §§ IV(8)(b), (11)(e).)

### E.    Fees And Expenses Of The Settlement Administrator

Plaintiffs seek Court approval for the appointment of ILYM Group, Inc., as the Settlement Administrator. (*See id.* § IV(6).) The Settlement Administrator's fees and expenses shall be paid from the Total Settlement Amount.  (*Id*. § IV(6)(b).)  Among other things, the Settlement Administrator's duties will include mailing the Notice Packets to Class and Collective Action Members, allocating the Net Settlement Fund across the Class and Collective Action Members, and making settlement payments in accordance with the Settlement Agreement. (*See id*. § IV(6)(a).)  The Settlement Administrator's fees and costs are projected to be (and shall not exceed) $25,000.

### F.    Payment Of Attorneys' Fees And Costs

Class Counsel will apply for an award of attorneys' fees and costs in the amount of

DM2\301265862.2

$250,000.00, equal to one-third (33.33%) of the Total Settlement Amount. (*Id*. § IV(11)(a).) Class Counsel will apply for fees and costs within fourteen (14) days before the Final Approval Hearing or by such other date as the Court may direct. (*Id*. § IV(17)(a).)

### G. Settlement Administration, Opt-In Process, Requests for Exclusion, And Objections

Subject to the Court's approval, the Settlement shall be administered by the Settlement Administrator within the following deadlines:

| | |
|---|---|
| Defendant shall provide the Settlement Administrator with the last known home addresses of the Class and Collective Action Members. Defendant will also provide the Settlement Administrator with the social security numbers of the Named Plaintiffs and of the individuals who have already consented to join the lawsuit as Opt-In Plaintiffs | Within 21 days of entry of the Preliminary Approval Order |
| Deadline for the Settlement Administrator to send a single notice packet containing (i) a Class Notice to the Class Members and (ii) an opt-in consent form for Collective Action Members | Within 21 days of receiving the Class and Collective Action Members' information from Defendant |
| Deadline for Class Members to postmark claim forms, requests for exclusion, and objections; deadline for Collective Action Members to submit Consent to Join forms | Within 60 days from the date of the mailing of the Notice Packets to Class and Collective Action Members |
| Deadline for the Settlement Administrator to provide the Parties with copies of all (i) properly received, timely, and complete claim forms and (ii) properly received, timely, and complete Consent to Join forms | Within 10 days after the deadline for (i) Class Members to postmark Claim Forms and (ii) Collective Action Members to postmark Consent to Join Forms |
| Deadline for the Settlement Administrator to provide the Parties with Claimants' information, including the estimated settlement payment to each Claimant and the percentage of Class Members who submitted requests for exclusion | Within 21 days after the deadline for (i) Class Members to postmark Claim Forms and (ii) Collective Action Members to postmark Consent to Join Forms |
| Deadline for the Settlement Administrator to provide Freedom with a report reflecting the employer's share of payroll employment taxes on the Settlement Payments to be paid to Claimants | Within 7 days of Final Approval of the Settlement |
| Deadline for the Settlement Administrator to advise counsel for Freedom of the total amount needed to fund the Qualified Settlement Fund to pay Service Payments, Settlement Payments to Claimants, Class | No later than 7 days before the |

6

| Counsel's attorneys' fees and costs, Settlement Administration Costs, and employer-side payroll taxes | Effective Date[1] |
|---|---|
| Deadline for Defendant to transfer to the Qualified Settlement Fund those remaining portions of the Total Settlement Amount needed to pay Service Payments, Settlement Payments to Claimants, Class Counsel's attorneys' fees and costs, Settlement Administration Costs, and employer-side payroll taxes | Within 14 days after the Effective Date |
| Deadline for the Settlement Administrator to mail Settlement Payments to each Claimant and Service Payments to each Named Plaintiff, and wire transfer attorneys' fees and costs to Class Counsel | Within 21 days after the Effective Date |

(*See id.* § IV(9).)

Class Members who wish to object to the Settlement must submit an objection to the Settlement Administrator, postmarked or otherwise received no later than sixty (60) days after the date of mailing of the Notice Packets.  (*See id*. § IV(9)(d).)  Only counsel for the Settlement Class Members who have filed timely objections to the Settlement Agreement will be allowed to participate in the Final Approval Hearing.  (*Id*. § IV(17)(d).)

Class Members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion to the Settlement Administrator, postmarked or otherwise received no later than sixty (60) days after the date of mailing of the Notice Packets. (*Id*. § IV(14)(d).)

### H.    Release Of Claims

All Class Members, other than those Class Members who submit timely and complete Requests for Exclusion forms, release the following claims:

---

[1] "The term 'Effective Date' shall be the later of 30 days after: (1) the date of the Court's entry of the Final Approval Order, if no objections have been lodged; (2) the date that the time for an appeal has expired without the filing of any appeal, if an objection has been lodged; or (3) the date of entry of an order upholding the Settlement and finally resolving any appeal, writ, or challenge to the Settlement that has been lodged, including with respect to any award of attorneys' fees and costs." (Settlement Agreement § IV(3)(d).)

7

> on behalf of themselves and their heirs, representatives, successors, assigns, and attorneys, fully and finally release and discharge Defendant and the Released Parties from any and all suits, actions, causes of action, claims, or demands in any way growing out of or related to their work for Defendant, or that were or could have been asserted in the Lawsuit, or that are based on or arise out of the facts alleged in any version of the complaint filed in the Lawsuit, from the beginning of the relevant period through the Effective Date of the Settlement Agreement, including without limitation: any claims under New Jersey, Pennsylvania, and Oregon common law and statutory law, the FLSA, any applicable federal, state, county, or local laws, statutes, regulations, ordinances, or wage orders for alleged unpaid overtime, regular, straight-time, or minimum wages; any claims for retaliation relative to any complaints made regarding allegedly unpaid overtime, regular, straight-time, or minimum wages; any claims for failure to provide compliant meal and/or rest breaks, for failure to pay meal and/or rest period compensation, for failure to maintain required business records, for failure to provide accurate or complete itemized wage statements, for failure to compensate for all time worked, for failure to properly calculate compensable time worked or the regular rate of pay, for waiting time penalties, and for failure to pay all wages due in a timely manner, including upon employment termination; any claims relating to contributions to any 401(k) or other retirement or employee benefit plan based on payments made by reason of the Settlement; and any claims for damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief, whether arising under common law, statutory law, wage statutes, federal, state, county, or local laws, regulations, ordinances, or wage orders . . .

(*Id*. § IV(5)(b).)

All Opt-In Plaintiffs and Claimants who submit timely and valid Claim Forms and Opt-In

Consent to Join Forms release the following claims:

> on behalf of themselves and their heirs, representatives, successors, assigns, and attorneys, shall fully and finally release and discharge Defendant and the Released Parties from any and all suits, actions, causes of action, claims, or demands in any way growing out of or related to their work for Defendant, or that were or could have been asserted in the Lawsuit, or that are based on or arise out of the facts alleged in any version of the complaint filed in the Lawsuit, from March 12, 2022, through the Effective Date of the Settlement Agreement, including without limitation: any claims under the FLSA, any applicable federal laws, statutes, regulations, ordinances, or wage orders for alleged unpaid overtime, regular, straight-time, or minimum wages; any claims for retaliation relative to any complaints made regarding allegedly unpaid overtime, regular, straight-time, or minimum wages; any claims for failure to provide compliant meal and/or rest breaks, failure to pay meal and/or rest period compensation, failure to maintain

8

required business records, failure to provide accurate or complete itemized wage statements, failure to compensate for all time worked, failure to properly calculate compensable time worked or the regular rate of pay, waiting time penalties, failure to pay all wages due in a timely manner, including upon employment termination; and any claims relating to contributions to any 401(k) or other retirement or employee benefit plan based on payments made by reason of the Settlement . . .

(*Id*. § IV(5)(c).)

In addition, Plaintiffs Christensen, Jack, and Medina shall sign general releases and waivers of all claims. (*Id*. § IV(5)(a).)

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT

"Rule 23(e) provides that a proposed settlement may only be approved 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 23(e)(2)). Before approving a class settlement, a district court must find that the requirements stated in Rules 23(a) and 23(b) are met and must separately "determine that the settlement is fair to the class under [Rule] 23(e)." *In Re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009).

"Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation." *McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970, at *2 (E.D. Pa. Nov. 20, 2020) (quoting *In Re N.F.L. Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014)). "Only if the proposed settlement is found to be preliminarily acceptable does a court direct notice to all class members who would be bound by the settlement, so that they may have an opportunity to be heard, object to, and potentially opt out of the settlement." *Id*.

Under Rule 23(e)(1), the Court must direct notice to the class of a settlement upon determining that notice is justified because the Court concludes it is more likely than not to finally approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). Before finally

9

DM2\301265862.2

approving a settlement, the Court should consider whether: (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal; how the relief will be distributed; the terms governing attorneys' fees; and any side agreements; and (4) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The goal of the Court's inquiry at the preliminary approval stage is determine whether a proposed settlement is fair and likely to be approved. *See In Re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) ("The role of a district court is not to determine whether the settlement is the fairest possible resolution. The Court must determine whether the compromises reflected in the settlement … are fair, reasonable, and adequate when considered from the perspective of the class as a whole."). Where the negotiated resolution is fair, reasonable, and adequate, the Third Circuit favors settlement over protracted litigation. *See In Re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

### A.    The Settlement Satisfies All Of The Standards For Preliminary Approval

In determining whether preliminary approval is warranted, courts consider whether a proposed class settlement is within the range of what might be found fair, reasonable, and adequate such that notice of the settlement should be given to class members and a hearing scheduled to determine final approval. *See* Manual for Complex Litigation, Fourth Ed. § 13.14 at 172-73 (2004) ("*Manual Fourth*") (at preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must

DM2\301265862.2

direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing").

Rule 23(e)(2) was amended in 2018 to provide four factors for district courts to consider when determining whether a settlement is fair, reasonable, and adequate, including: (1) whether the class representative and class counsel have adequately represented the class; (2) whether the settlement was the product of arms' length negotiation; (3) whether the class relief is adequate; and (4) whether the settlement treats class members equitably relative to each other. Plaintiffs respectfully submit that the Settlement meets (and exceeds) the requirements for preliminary approval, certification of the settlement classes, and issuance of notice.

### *Rule 23(e)(2) Factors 1 and 2 – Adequate Representation and Arms' Length Negotiation*

The Advisory Committee Notes to the 2018 Amendments to Rule 23(e) explain that the first two factors "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement … The focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes (2018 Amendment); *see also In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (class counsel should have "adequate appreciation of the merits of the case before negotiating"). Here, the quality of representation from Class Counsel Javier Merino of DannLaw, Robert E. DeRose and Anna R. Caplan of Barkan Meizlish DeRose Cox, LLP, and Clif Alexander and Carter T. Hastings of Anderson Alexander, PLLC, has been more than adequate in advancing the Class's interests. Class Counsel have significant experience and expertise in nationwide wage-and-hour class actions under the FLSA and state laws. (*See* DeRose Decl. ¶¶ 7-15, *See also* Attachment 2 (Barkan Meizlish DeRose Cox, LLP Firm Resume)). Plaintiffs' counsel drew on their substantial experience in analogous wage and hour cases to

11

provide Plaintiffs with a high degree of expertise in this field. DeRose Decl. ¶ 19. In turn, Duane Morris, LLP, which represents Freedom Mortgage, is one of the leading employer-side class action defense law firms in the country. *See Macedonia Church v. Lancaster Hotel, LP*, No. 05-CV-0153, 2011 WL 2360138, at *6 (D. Conn. June 9, 2011) (". . . Mr. Maatman [is] experienced, highly capable counsel, who [is] well-versed in class action litigation."); *see id.* at *10 (". . . Mr. Maatman, as counsel for Defendants, [is] familiar with the legal and factual issues of this case in particular and with class action litigation in general and [he] vigorously pursued [his] clients' respective positions and negotiated at arm's length and in good faith in resolving this class action."); *see Ellis v. Costco Wholesale Co.*, No. 04-CV-3341, 2014 WL 12641574, at *1 (N.D. Cal. May 27, 2014) (finding Mr. Maatman is "experienced counsel"); *see Darling v. Dow Chemical Co.*, No. 1:22-CV-13093, 2023 WL 8480059, at *2 (E.D. Mich. Dec. 7, 2023) (finding Mr. Maatman is "experienced counsel").

Leading up to the mediation, Class Counsel protected the interests of the Class by interviewing numerous witnesses and Opt-Ins and reviewing a large body of documents and class-wide payroll data. Class Counsel also analyzed this data to create a damages model in preparation for the mediation, which required a thorough understanding of the available damages and the potential exposure in the case. (*See* DeRose Decl. ¶¶ 20-22.) This investigation and detailed review of payroll records ensured that Class Counsel negotiated on behalf of the Class with sufficient information. And where, as here, the Parties were vigorously represented by experienced counsel throughout months of adversary negotiations following informal pre-mediation discovery, courts have found no evidence of collusion and have approved settlements as being obtained by adequate class counsel and the product of arms' length negotiations. *See, e.g.*, *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *13-14 (D.N.J. Nov. 10, 2016) (concluding that "[p]laintiff and his

12

counsel had a sufficient understanding of their claims and defenses" and granting final settlement approval where the parties "had participated in mediation with a respected mediator" and class counsel "had received factual information from [defendant] in connection with the mediation").

As for whether the Settlement was the product of arms' length negotiations, this factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Committee Notes (2018 Amendment). The Parties' proposed Settlement satisfies the "arms' length negotiations" factor, as it was achieved through lengthy negotiations, including a full-day, in-person mediation on October 16, 2025, in New York City with Dennis Clifford, an experienced and respected wage-and-hour class and collective action mediator. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at \*10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (citations omitted).

### Rule 23(e)(2) Factor 3 – Adequate Relief

Under the third factor, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

Here, each of the "adequate relief" considerations supports granting preliminary approval. The Settlement is appropriate considering the substantial costs, risks, and delay inherent in this complex class action. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010)

13

(acknowledging that settlements preserve resources and allow parties to avoid the expense, uncertainty, and risks of a complex trial). Continued litigation of this case would require the Parties to produce thousands of documents; conduct potentially hundreds of depositions of opt-in Plaintiffs, putative class members, and Freedom managers; and retain experts to prepare statistically representative studies of the time for which Plaintiffs were allegedly not compensated while booting up their work computers. The Parties would also likely engage in adversarial motion practice, such as a motion by Plaintiffs to send notice to allegedly similarly situated employees and a potential motion for Rule 23 class certification; Defendant's potential motion for decertification of any FLSA collective action; and any dispositive motions filed before trial. Any outcome after trial would also likely be further delayed by an appeal. *See, e.g.*, *Johnson v. Brennan*, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) ("By reaching a favorable settlement prior to dispositive motions or trial, [p]laintiffs avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.").

In addition to costs and delay, there is substantial risk from continued litigation. Freedom vigorously disputes Plaintiffs' claims and is prepared to assert defenses that may undercut Plaintiffs' chances of success of the merits. For instance, Freedom would assert that Plaintiffs' alleged pre-shift work is not compensable under the FLSA because time spent by a remote call-center employee booting up his or her computer before clocking in is not an "integral and indispensable" activity. To support this argument, Freedom would rely on case law providing that the allegedly "off-the-clock" time at issue in Plaintiffs' FAC was spent on non-compensable tasks – *e.g.*, turning on their computers; entering their login credentials; and opening the relevant timekeeping systems. *See Lott v. Recker Consulting, LLC*, 2025 WL 2550009, at *1, 17 (S.D. Ohio Sept. 4, 2025) (examining "when the workday starts and ends under the [FLSA] for an employee

14

who works from home through computer-based activities" and concluding that "turning on or waking up the computer; entering a username and password to access the computer; dual-authenticating through Duo; opening the timekeeping system; accessing a VPN, on the front end; and shutting down the computer, locking the screen, or putting it in sleep mode, on the back end" are "preliminary or postliminary" activities and that "integral and indispensable" activities do not begin until remote employees "open and begin operating any applications they primarily work in or use throughout the workday in connection with answering or handling … inbound calls"). If Freedom were to prevail at summary judgment by showing that Plaintiffs' compensable workdays began only ***after*** they booted up their computers, then Plaintiffs would risk obtaining no relief whatsoever. *See Yedlowski*, 2016 WL 6661336, at \*15 (noting possible result of trial would be "a recovery for the Class that may be less than the Settlement Amount or possibly no recovery at all" and that "[t]his [s]ettlement allows the Class to recover promptly without incurring additional risk or costs"). Freedom would also challenge Plaintiffs' arguments that their claims are appropriate for class and collective action treatment.

Given the significant risks, obstacles, and costs associated with continued litigation facing the Class, the settlement amount of $750,000 is fair and reasonable. As to the "effectiveness of any proposed method of distributing relief to the class," the method under the Settlement is straightforward. Freedom has already identified the Class Members and the number of weeks during which they worked and were required to clock in and/or log in to work using a software application. Notice will be mailed directly to each Class Member by the Settlement Administrator, apprising them of the terms of the Settlement and allowing them an opportunity to submit a claim form or request exclusion from the Settlement within 60 days of the mailing of the Notice Packet. Eligible Class Members will receive payment, which will be distributed directly to the Class

DM2\301265862.2

Members via check. Courts have approved similar distribution methods. *See*, *e.g.*, *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at \*2, 8-9 (D.N.J. Aug. 6, 2014).

The remaining considerations under this factor also weigh in favor of granting preliminary approval. The Settlement provides attorneys' fees and costs of up to one-third (33.33%) of the Total Settlement Amount. As discussed in more detail in Section III.D below, this amount is reasonable and aligns with fee awards approved under the percentage-of-the-fund method commonly followed in the Third Circuit. *See, e.g.*, *Stansbury v. Barrick Enters., Inc.*, 2025 WL 1640734, at \*14 & &14 n.13 (M.D. Pa. June 9, 2025) (preliminarily approving "hybrid" FLSA and Rule 23 settlement where class counsel planned to seek "an award of fees not to exceed 35% of the total settlement amount"; "[t]he Court concludes that Lead Counsel's proposed request appears reasonable for purposes of Notice to the Class Members, as it is within the range typically awarded in similar cases in this Circuit"). Finally, the only other agreement (other than the Settlement Agreement) that may be within the scope of Rule 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.") is a Settlement Agreement and Release Regarding Resignation of Chris C. Christensen, which relates to Plaintiff Christensen's continued employment with, and resignation from, Freedom and which does not contemplate resolution of the wage-and-hour claims at issue in the Settlement. (*See* DeRose Decl. ¶ 28.)

### Rule 23(e)(2) Factor 4 – Equitable Treatment

The Court must also determine whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). For this factor, courts consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear

16

on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes (2018 Amendment).

Here, the Settlement Agreement treats class members equitably relative to each other. All Settlement Class Members would receive notice and equal opportunities to submit claims and object or request exclusion, ensuring equal treatment. The Settlement Agreement allocates each Class Member's share of the Settlement through a points-based formula that properly weighs the number of weeks worked by Settlement Class Members during the relevant class periods while accounting for the various forms of relief available under the laws of New Jersey, Oregon, and Pennsylvania to avoid overlapping recovery between the asserted FLSA and state-law claims. (*See* Settlement Agreement at p. 25 n.1.)

The formula provides that (i) FLSA Collective Action Members are assigned 2 points per relevant workweek from March 12, 2022, through the date of preliminary approval of the Class Action Settlement or 90 days from the date of execution of the Parties' Memorandum of Understanding, whichever occurs last; and (ii) Settlement Class Members are assigned 1 point per relevant workweek during the applicable class periods (for New Jersey, beginning August 6, 2019; for Oregon, beginning March 12, 2023; and for Pennsylvania, beginning March 12, 2022).

The difference between the treatment of Class Members and the Named Plaintiffs is minimal and consists solely of the Named Plaintiffs receiving Service Payments of up to $7,500 for Named Plaintiff Christensen, up to $2,500 for Named Plaintiff Medina, and up to $2,500 for Named Plaintiff Jack. "[N]amed plaintiffs are commonly awarded service payments in class action suits that involve a common fund to be distributed to a class." *Katz v. DNC Servs. Corp.*, 2024 WL 454942, at *4 (E.D. Pa. Feb. 6, 2024) ("The Court has 'ample authority' to award service payments where particular class members 'provided a benefit to the class or incurred risks during the course

17

of litigation.'") (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-CV-1248, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011)). The Service Payments proposed in this Settlement are similar to those approved by courts in other collective and class actions. *See, e.g., id.* at *16 (awarding $10,000 to named plaintiff); *In Re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 251 (E.D. Pa. 2009) (awarding ten named plaintiffs $ 10,500 each and two named plaintiffs $5,000 each); *Bredbenner*, 2011 WL 1344745, at *22-23 (awarding $10,000 to each named plaintiff).

\*     \*     \*

In addition to the Rule 23(e) factors, the Third Circuit has articulated the following nine factors for district courts to consider in determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In Re Pet Food Products Liability Litig.*, 629 F.3d 333, 350 (3d 2010) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

### *Girsh Factor 1 – The Complexity, Expense, and Likely Duration of the Litigation*

First, and as discussed, if this case were to continue the Parties would likely spend considerable time, money, and resources litigating Plaintiffs' claims and expend great effort conducting discovery and motion practice. *See Bredbenner*, 2011 WL 1344745, at *11 (noting that where action involves claims arising under both federal and state statutes [as is the case here], "the differences in substantive law … would undoubtedly make the process of litigation complex"). Therefore, this favor weighs in favor of preliminary approval.

18

***Girsh Factor 2 – The Reaction of the Class to the Settlement***

Second, Class Counsel is unaware of any objections by absent Class Members. Each Settlement Class Member will receive a Class Notice Packet consisting of the Notice of Settlement providing instructions to any Class Members who seek to object to the Settlement on how to submit objections and be heard at the Final Fairness hearing. This factor is neutral at this stage, and Class Counsel would update the Court regarding this factor when seeking final approval.

***Girsh Factor 3 – The Stage of the Proceedings and the Amount of Discovery Completed***

"The third *Girsh* factor 'captures the degree of case development that class counsel [has] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In Re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438-39 (3d Cir. 2016) (citation omitted). "[F]ormal discovery is not a requirement for the third *Girsh* factor. What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims. Moreover, requiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip — the costs of formal discovery itself — off the table during negotiations. This could deter the early settlement of disputes." *Id.* at 439 (affirming district court's determination "that class counsel adequately evaluated the merits of the preemption and causation issues through informal discovery").

This case was sufficiently advanced at the time the Parties reached the Settlement. Prior to the Settlement, Class Counsel interviewed numerous witnesses and the Opt-In Plaintiffs, corresponded and exchanged information with Defendant's counsel, reviewed a large volume of documents (including Defendant's wage-and-hour policies and payroll data for the Settlement

19

Class that was used to prepare a comprehensive damage model), and engaged in lengthy discussions of contested issues. (DeRose Decl. ¶¶ 21-22.) The Parties also submitted comprehensive mediation briefs before the full-day mediation with Dennis Clifford; conducted various witness interviews, multiple meet-and-confers, and telephone conferences; and exchanged large volumes of data. This work yielded substantial information and allowed the Parties to intelligently and freely discuss the merits of Plaintiffs' claims and Defendant's defenses, thereby enabling Class Counsel to assess the risks and uncertainties of continued litigation and the benefits of settlement. *See, e.g.*, *In Re Ocean Power Techs., Inc.*, 2016 WL 6778218, at \*17 (D.N.J. Nov. 15, 2016) ("Although there has been no formal discovery, [p]laintiff's Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement. … Counsel also participated in a formal mediation session with Mr. Bruce Friedman, Esq. where the strengths and weaknesses of the Class' claims were fully vetted. Prior to the mediation, [p]laintiff and [d]efendants provided written submissions to Mr. Friedman detailing their positions on the liability and damages of the case and highlighted the factual and legal issues in dispute. There is no question that [p]laintiff and [p]laintiff's Counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by [d]efendants, as well as the substantial risks of continued litigation and the propriety of settlement.") (internal citation omitted). Accordingly, this factor warrants approval of the Settlement.

> ### *Girsh Factors 4, 5, and 6 – The Risks of Establishing Liability; The Risks of Establishing Damages; and The Risks of Maintaining the Class Action Through Trial*

In considering the risks of establishing liability, damages, and maintaining a class action through trial, several substantial uncertainties exist. First, there would be difficultly demonstrating liability for employees' unpaid overtime wages for time worked "off-the-clock" before each shift. There would also be difficulty and uncertainty in attempting to establish damages for any unpaid

20

overtime wages, which would require proof regarding the time it took employees to turn on their work computers, clock in, and open the software programs needed to perform their duties. In sum, the immediate cash payout offered in the proposed Settlement provides a significant benefit when weighed against the risks, delays, and expenses associated with litigating Plaintiffs' present claims. Accordingly, these three factors weigh in favor of granting preliminary approval of the Settlement.

### Girsh Factor 7 – The Ability of the Defendant to Withstand a Greater Judgment

In considering the seventh factor, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see Weiss v. Mercedes-Benz*, 899 F.Supp. 1297, 1302 (D.N.J. 1995) (determining that Mercedes could withstand higher judgment but approving settlement); *Singleton*, 2014 WL 3865853, at *6 (approving settlement despite lack of evidence regarding defendant's ability to withstand a higher judgment). Here, continued litigation, a trial, and potential appeals would be expensive and would deplete Freedom's resources and its ability and willingness to pay a potential future settlement. Consequently, given the uncertainties of further litigation, this factor weighs in favor of granting preliminary approval.

### Girsh Factors 8 and 9 – The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation

Finally, "[t]he last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In Re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998); *see also Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) ("The final two *Girsh* factors are typically considered in tandem."). The Third Circuit has advised that "in cases primarily seeking monetary relief," district courts should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not

21

prevailing … with the amount of the proposed settlement." *In Re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (internal quotation marks omitted). Importantly, courts in the Third Circuit acknowledge that a settlement may be appropriate even when it represents only a portion of the total potential exposure if the case proceeded to trial. *See Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006), *aff'd*, 266 F. App'x 114 (3d Cir. 2008) (approving $15 million settlement where maximum exposure at trial could have been as high as $104 million); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (granting final approval where settlement "represent[ed] approximately seventeen percent of single damages to the class, an amount significantly higher than the proportion of damages obtained in settlement agreements approved by other courts").

In this case, the Parties analyzed and understood the strengths and weaknesses of their respective cases. Class Counsel's extensive preparation for mediation and familiarity with the relevant facts, as well as the risks associated with continued litigation, demonstrates that the settlement is fair and reasonable. Accordingly, the final two factors weigh in favor of granting preliminary approval of the proposed Settlement.

B.      **The Court Should Grant Conditional Certification Of The Settlement Classes**

As part of the Settlement, Plaintiffs seek (and, for purposes of settlement only, Freedom does not oppose) certification of the Settlement Classes pursuant to Rule 23(e), which provides the mechanism for certifying a class action for settlement purposes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). In *Amchem*, the U.S. Supreme Court held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management but must find that the other certification requirements are satisfied. *Id.* at 620.

22

DM2\301265862.2

To certify a class for settlement purposes, district courts must conclude that the requirements of Rules 23(a) and 23(b) are satisfied. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 487 (3d Cir. 2017). To obtain class certification, Plaintiffs must satisfy Rule 23(a)'s four requirements ((1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation), *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015), in addition to Rule 23(b)(3)'s two requirements ((5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy"), Fed. R. Civ. P. 23(b)(3).

### 1.    Numerosity

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." "To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *In Re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 510 (D.N.J. 1997) (citing *Lerch v. Citizens First Bancorp. Inc.*, 144 F.R.D. 247, 250 (D.N.J. 1992)).

Here, there are over 900 Settlement Class Members, with over 700 individuals in the New Jersey Settlement Class, over 100 individuals in the Oregon Settlement Class, and over 70 individuals in the Pennsylvania Settlement Class. Joinder of that number of individuals is impracticable. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). Therefore, the numerosity requirement is satisfied.

23

### 2. Commonality And Typicality

Commonality "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "[E]ven a single common question will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (internal citation omitted).

For purposes of the Settlement only, the Parties agree that Plaintiffs' claims are typical of the claims of Settlement Class Members and that common questions of law and fact exist regarding Freedom's alleged violations of the FLSA and of the laws of New Jersey, Oregon, and Pennsylvania, including facts bearing on whether Freedom was required to compensate remote employees for time spent booting up their computers.

### 3. Adequacy

Rule 23(a)'s adequacy requirement provides that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "has two components designed to ensure that absentees' interests are fully pursued." *In Re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d. Cir. 2004) (internal citation omitted). *First*, the adequacy inquiry "tests the qualifications of the counsel to represent the class." *Prudential*, 148 F.3d at 313 (internal citation omitted). *Second*, it seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.*

The adequacy requirement is met here. Plaintiffs share common interests with unnamed Settlement Class Members in that they all seek to recover allegedly unpaid overtime wages from Freedom for time spent booting up their company-issued computers and logging into work. Named Plaintiffs understand and accept their obligations under the Settlement Agreement and have adequately represented the interests of the Class. Named Plaintiffs have also retained experienced

24

counsel who routinely handle wage-and-hour class actions. (*See* DeRose Decl. ¶ 19) Class Counsel have ample knowledge of the relevant facts and legal issues. Accordingly, the adequacy requirement is satisfied.

### 4.     Certification Of The Settlement Class Is Proper Under Rule 23(b)(3)

In addition to satisfying the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b). Here, the Parties agree for purposes of settlement that class certification is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 5.     Ascertainability

The Parties agree for purposes of settlement that the Settlement Class Members are ascertainable because they are "readily identifiable" from payroll and employment records.

### C.     The Court Should Appoint Class Counsel

In determining whether to appoint class counsel under Rule 23(g), the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. DannLaw, Barkan Meizlish DeRose Cox, LLP, and Anderson Alexander, PLLC, attorneys for Plaintiffs Christensen, Jack, and Gladis in this litigation, satisfy each factor.

Here, DannLaw, Barkan Meizlish DeRose Cox, LLP, and Anderson Alexander, PLLC have represented the Plaintiffs from the inception of the litigation and have dedicated hundreds of

25

attorney hours into this matter. (DeRose Decl. ¶¶ 16-17.) Barkan Meizlish DeRose Cox, LLP performed substantial work identifying, investigating, and settling the Class and Collective Action Members' claims, as recounted above. (*See id.* ¶ 21.)

Furthermore, DannLaw, Barkan Meizlish DeRose Cox, LLP, and Anderson Alexander, PLLC have substantial experience handling complex class actions and are well-versed in the law governing wage-and-hour class and collective actions. (*Id.* ¶19, Attachment 1 (Barkan Meizlish DeRose Cox, LLP Firm Resume).) The work that DannLaw, Barkan Meizlish DeRose Cox, LLP, and Anderson Alexander, PLLC have performed in litigating and settling this case on terms favorable to the Settlement Class demonstrates their commitment to the Class. If appointed as Class Counsel, DannLaw, Barkan Meizlish DeRose Cox, LLP, and Anderson Alexander, PLLC will dedicate the necessary additional time and labor to ensure that the Settlement Administrator sends Notice to each Class Member and addresses any of their questions. (*Id.* ¶ 27.) Accordingly, the Court should appoint Javier Merino of DannLaw, Robert E. DeRose and Anna R. Caplan of Barkan Meizlish DeRose Cox, LLP, and Clif Alexander and Carter T. Hastings of Anderson Alexander, PLLC as Class Counsel.

**D.    Class Counsel's Request For Fees And Costs Is Reasonable**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes (2018 Amendment). In this case, Plaintiffs will petition the Court for an award of attorneys' fees and costs of up to one-third of the Total Settlement Amount. (Settlement Agreement § IV.11.)

At the final approval stage, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees and costs under the Third Circuit's *Gunter* and *Prudential* factors. *See*

*Tompkins v. Farmers Ins. Exch.*, 2017 WL 4284114, at \*9-10 (E.D. Pa. Sept. 27, 2017) (describing factors). In the meantime, preliminary approval is warranted because a 33.33% fee recovery is the "benchmark" in wage-and-hour cases. *See, e.g.*, *Stansbury v. Barrick Enters., Inc.*, 2025 WL 1640734, at \*14 & &14 n.13 (M.D. Pa. June 9, 2025) (preliminarily approving "hybrid" FLSA and class-action settlement where class counsel sought "an award of fees not to exceed 35% of the total settlement amount"); *Payton-Fernandez v. Burlington Stores, Inc.*, 2024 WL 5202421, at \*9 (D.N.J. Dec. 23, 2024) ("The Court finds the 33 1/3% attorney's fee in this case reasonable in light of the size of the settlement fund and the number of opt-in members who benefit from counsel's efforts in this case.") (Donio, Magis. J.); *Katz v. DNC Servs. Corp.*, 2023 WL 2955887, at \*10 (E.D. Pa. Apr. 14, 2023) (preliminarily approving "hybrid" FLSA and class-action settlement where class counsel sought attorneys' fee award of "one-third (33 1/3%) of the Class Settlement Fund"). Thus, this factor will likely be satisfied and thus weighs in favor of granting preliminary settlement approval.

### E.      The Service Payments To The Named Plaintiffs Are Reasonable

The Service Payments of up to $7,500 for Named Plaintiff Christensen, up to $2,500 for Named Plaintiff Medina, and up to $2,500 for Named Plaintiff Jack (*see* Settlement Agreement §§ IV(8)(b), (11)(e)) are appropriate to compensate them for the services they provided and the risks they incurred during the course of the litigation and to reward the public service of contributing to the enforcement of mandatory laws. *See, e.g.*, *Payton-Fernandez v. Burlington Stores, Inc.*, 2024 WL 5202421, at \*14 (D.N.J. Dec. 23, 2024) (Donio, Magis. J.). District courts in the Third Circuit routinely award service payments in excess of $7,500 for named plaintiffs in similar class and collective actions. *See id.* (awarding $10,000 service payments to named

DM2\301265862.2

plaintiffs). The Service Payments under the Settlement Agreement are in line with the amounts normally awarded in this Circuit and should be approved.

### F.    The Proposed Notice Provides Adequate Notice To Settlement Class Members

#### 1.    The Notice Satisfies Due Process

Pursuant to Rule 23(c)(2)(B), to comport with due process, class notice "'should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *Perrigo Institutional Inv. Grp. v. Papa*, 150 F.4th 206, 220 (3d Cir. 2025) (quoting *In Re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)). "[D]ue process requires only that a notice 'contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class.'" *Id.* at 220-21 (citation omitted).

The Parties propose that the Settlement Administrator send the Notice of Settlement, Claim form, and Request for Exclusion form to each Class Member by U.S. First Class mail to their last-known addresses provided by Defendant. (*See* Settlement Agreement § (13)(a).) The Settlement Administrator will perform one skip trace on returned mail and will send a second notice mailing to a second address for anyone identified with a second address by either the post office or the skip trace. *Id*. The Notice Packet describes the process through which Class Members can either object to or exclude themselves from the Settlement. (*See* Settlement Agreement Ex. D.) Class Members will have sixty (60) days from the date of mailing of the Class Notice Packets to submit a Claim form, a Request for Exclusion form, or an objection to the Class Action Settlement. (*Id.*) Contact information for the Settlement Administrator and Class Counsel is provided in the Notice Packet so that Class Members can ask any questions relating to the Settlement. Therefore, the Notice – which is consistent with class certification notices approved by numerous courts – comports with

Rule 23(c)(2)(B)'s due process requirements. *See, e.g.*, *Robertson v. Trinity Packaging Corp.*, 2025 WL 2224586, at *12, 19 (W.D.N.Y. Aug. 5, 2025).

### 2.     The Notice Is Accurate, Informative, And Easy To Understand

"Rule 23(c)(2) requires notice be given to all potential members of a Rule 23(b)(3) class informing them of the existence of a class action, the requirements for opting out of the class and/or entering an appearance with the court, and the applicability of any final judgment to all members who do not opt out of the class." *In Re Prudential Ins. Co.*, 148 F.3d 283, 209 (3d Cir. 1998).

Here, the Notice of Settlement (Ex. D to the Settlement Agreement) is written in plain language and provides clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement will provide Class Members; an explanation of the method of allocating Settlement Amount monies to Class Members; the scope of releases; the Settlement Administrator's estimated expenses; the procedures and deadlines for submitting Claim forms, Request for Exclusion forms, and objections; the consequences of taking or foregoing the various options available to Class Members; and the date, time, and place of the Final Approval hearing. *See* Manual for Complex Litigation, Fourth § 21.312 (2004) ("*Manual Fourth*"). The Notice also describes the nature of the separate Class Action and FLSA Collective Action portions of the Settlement.  Further, pursuant to Rule 23(h), the Notice of Settlement also sets forth the maximum amounts of attorneys' fees and costs that may be sought by Class Counsel. (*See* Settlement Agreement Ex. D at p. 11.) Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311-21.312.

### G.     The Court Should Set A Final Fairness Hearing

The Court should schedule a final fairness hearing approximately 110 days after granting

preliminary approval to determine whether final approval of the Class Action Settlement is proper. The fairness hearing will provide a forum to explain, describe, or challenge the terms and conditions of the Class Action Settlement, including the fairness, adequacy, and reasonableness of the Settlement, the attorneys' fees award, the reimbursement of costs, and the proposed Service Payments.[2]

## IV.    CONCLUSION

For these reasons, the Court should: (1) preliminarily approve the Settlement pursuant to Rule 23(e); (2) conditionally certify the Settlement Classes pursuant to Rules 23(c) and 23(e); (3) approve the proposed Settlement Notice and Claim Form to be disseminated to Class Members pursuant to the Settlement Agreement; (4) appoint ILYM Group, Inc. as the Settlement Administrator; (5) appoint Robert E. DeRose and Anna R. Caplan of Barkan Meizlish DeRose Cox, LLP and Clif Alexander and Carter T. Hastings of Anderson Alexander, PLLC and local Class Counsel Javier Merino of DannLaw as Class Counsel; and (6) schedule a fairness hearing.


 **Dated: February 11, 2026**               Respectfully Submitted,

                                            /s/Javier Merino_____
                                            Javier Merino
                                            (NJ Bar #078112014)
                                            DANNLAW
                                            825 Georges Road, Second Floor
                                            North Brunswick, NJ 08902
                                            Telephone: (201) 355-3340
                                            jmerino@dannlaw.com

                                            Robert E. DeRose (admitted *pro hac vice*)
                                            Anna R. (Caplan) Doren (admitted *pro hac vice*)
                                            BARKAN MEIZLISH DEROSE COX, LLP
                                            4200 Regent Street, Suite 210
                                            Columbus, OH 43219

---

[2] Plaintiffs plan to seek approval of the FLSA Collective Action portion of the Settlement after Court-supervised notice has been sent to Collective Action Members and contemporaneous with Plaintiffs' forthcoming motion for final approval of the Class Action Settlement.

DM2\301265862.2

Telephone: (614) 221-4221
bderose@barkanmeizlish.com
adoren@barkanmeizlish.com

Clif Alexander (admitted *pro hac vice*)
Carter T. Hastings (admitted *pro hac vice*)
ANDERSON ALEXANDER, PLLC
101 N. Shoreline Boulevard, Suite 610
Corpus Christi, TX 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
carter@a2xlaw.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I, Javier Merino, an attorney, certify that on February 11, 2026, I caused a true and correct copy of the foregoing document to be filed through the Court's CM/ECF System. A copy of said document will be electronically transmitted to all counsel of record.


/s/Javier Merino_____
Javier Merino

31

DM2\301265862.2